### No. 26575

**Alliance Clothing Ltd., a Hong Kong corporation v. The District Court for the City and County of Denver and the Honorable James C. Flanigan, District Judge of said Court**

(532 P.2d 351)

Decided February 18, 1975.

Holland & Hart, David G. Palmer, for petitioner.

Snead, Wright and Babbs, E. Alan Hampson, for respondents.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

This is an original proceeding in which the petitioner, Alliance Clothing Ltd., requests a writ of prohibition to prevent the Denver District Court from subjecting it to in personam jurisdiction pursuant to the provision of the Colorado long-arm statute providing for jurisdiction when a ''tortious act'' has been committed in this state. Section 13-1-124(1)(b), C.R.S. 1973.

In a complaint filed in the respondent court, Susan Birnkrant alleged that she fell while skiing at Vail, Colorado and suffered severe and permanent injuries because of latent defects in the parka and pants she was wearing. The fabric used for the exterior of these garments is claimed to have an insufficient coefficient of friction to impede or prevent dangerous slides when a skier has fallen. The defendants are manufacturers, distributors and retailers of the plaintiff's ski apparel.

The defendant-petitioner, Alliance Clothing Ltd., is a Hong Kong corporation and purportedly manufactured the pants worn by the plaintiff. Alliance was served with process at its Hong Kong office pursuant to section 13-1-125, C.R.S. 1973. Alliance contends that the exercise of personal jurisdiction in this case violates its due process rights under the Colorado and United States constitutions because traditional notions of fair play and substantial justice are violated. We disagree and therefore discharge our previously issued rule to show cause.

I.

The complaint in this action, besides alleging that Alliance manufactured the pants worn at the time of the fall, alleges that these pants were sold and distributed in the United States by defendants Archer Enterprises Ltd., a Hong Kong corporation, and H. G. Schwarz & Co., a California corporation. The pants were bought by the plaintiff from the defendant Bullrich Corporation, a Colorado corporation doing business as the Christy Sports Shop in Vail, Colorado. The plaintiff alleges in the complaint that Alliance is in the business of design, manufacture and distribution of ski clothing which was placed in the stream of commerce throughout the world, and specifically in the United States and Colorado by all of the defendants.

Alliance contends that Colorado case law construing the long-arm statute requires dismissal of this suit against it. Resolution of this question depends on whether a corporation foreign to the United States (hereinafter called an alien corporation) is subject to the same rules with regard to the exercise of jurisdiction by a Colorado court as is a corporation authorized to do business under the laws of one of the United States other than Colorado (hereinafter called a native corporation).

When examining whether jurisdiction may properly be exercised under section 13-1-124(1)(b), C.R.S. 1973, over alien corporations, we must determine whether subjecting the defendant to the jurisdiction of the Colorado court offends traditional notions of fair play and substantial justice. *E.g., International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In both *Czarnick v. District Court,* 175 Colo. 482, 488 P.2d 562, and *Vandermee v. District Court,* 164 Colo. 117, 433 P.2d 335, we held that a defendant-manufacturer who places his products in interstate commerce can be called into this state to defend actions for damages caused by defects in those products, without violating the manufacturer's right to due process.

Alliance concedes that negligence in another jurisdiction which proximately results in injury in Colorado is a tortious act within the meaning of the long-arm statute. Indeed, we have so held in *Texair Flyers, Inc. v. District Court,* 180 Colo. 432, 506 P.2d 367, *Czarnick, supra,* and *Vandermee, supra.* Thus, since the plaintiff has alleged negligence in another jurisdiction which resulted in injury in Colorado and also alleged that the defendant placed his product into the stream of commerce, Alliance could clearly be called to defend this action in Colorado if it were a native corporation.

The petitioner contends that *Ferrari S.p.A. Sefac v. District Court,* 185 Colo. 136, 522 P.2d 105, *Granite States Volkswagen, Inc. v. District Court,* 177 Colo. 42, 492 P.2d 624, and *Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 448 P.2d 783, require an opposite conclusion at least with regard to alien corporations. However, in *Ferrari* we found that a tortious act had not been committed in Colorado and that the defendant Ferrari did not have sufficient contacts with Colorado to constitutionally subject it to personal jurisdiction under the ''transaction of any busi-

ness'' portion of our long-arm statute. Section 13-1-124(1)(a), C.R.S. 1973. Similarly, *Safari Outfitters* was a case under the ''transaction of any business'' portion of the statute and minimum contacts could not be found. In *Granite States Volkswagen* the defendant Volkswagen dealer had not availed itself of the channels of interstate commerce. Here, the petitioner has alleged conduct falling under the ''tortious act'' portion of the long-arm statute, and that the defendant has allegedly availed itself of the channels of commerce. Thus, the cases the petitioner cites are inapposite in determining the jurisdictional question presented.

II.

Since the defendant Alliance could be constitutionally subjected to personal jurisdiction in Colorado if it were a native corporation, we turn to examine the question of whether the result is different in this case because Alliance is an alien corporation.

A number of courts have held that similar state statutes, in cases alleging tortious conduct, subjected alien corporations to personal jurisdiction within the state. *See Duple Motor Bodies, Ltd. v. Hollingsworth,* 417 F.2d 231 (9th Cir. 1969); *Reilly v. P.J. Wolff & Sohne,* 374 F. Supp. 775 (D.N.J. 1974); *Engineered Sports Products v. Brunswick Corp.,* 362 F. Supp. 722 (D. Utah 1973); *Scanlan v. Norma Projektil Fabrik,* 345 F. Supp. 292 (D. Mont. 1972); *Liberty Mutual Insurance Co. v. American Pecco Corp.,* 334 F. Supp. 522 (D.D.C. 1971); *Blum v. Kawaguchi, Ltd.,* 331 F. Supp. 216 (D. Neb. 1971); *Scafati v. Bayerische Motoren Werke AG,* 53 F.R.D. 256 (W.D. Pa. 1971); *Benn v. Linden Crane Co.,* 326 F. Supp. 995 (E.D. Pa. 1971); *Shoei Kako Co., Ltd. v. Superior Court,* 33 Cal. App. 3d 808, 109 Cal. Rptr. 402 (1973); *Regie Nationale des Usines Renault v. Superior Court,* 208 Cal.App.2d 702, 25 Cal. Rptr. 530 (1962); *Certismo v. Heidelberg Co.,* 122 N.J. Super. 1, 298 A.2d 298 (1972), *aff'd sub nom. Van Eeuwen v. Heidelberg Eastern, Inc.,* 124 N.J. Super. 251, 306 A.2d 79 (1973); *Deutsch v. West Coast Machinery Co.,* 80 Wash.2d 707, 497 P.2d 1311, *cert. denied sub nom.; Kansai Iron Works, Ltd. v. Marubeni-Iida, Inc.,* 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972); *Omstead v. Brader Heaters, Inc.,* 5 Wash. App. 258, 487 P.2d 234 (1971),

*aff'd* 80 Wash. 2d 720, 497 P.2d 1310 (1972) [opinion of the Court of Appeals adopted as opinion of the Supreme Court]. *Contra, Gorso v. Bell Equipment Corp.,* 476 F.2d 1216 (3d Cir. 1973); *Velandra v. Regie Nationale des Usines Renault,* 336 F.2d 292 (6th Cir. 1964). *But cf. Moyses v. Spartan Asphalt Paving Co.,* 383 Mich. 314, 174 N.W.2d 797 (1970).

■ In all the cases subjecting alien manufacturers to personal jurisdiction, the courts noted that the manufacturer could reasonably foresee that his product would be used in the United States or in the state in question. It does not offend traditional notions of fair play and substantial justice to expect a foreign manufacturer who places his product in the streams of commerce and can foresee that his product will be used in the United States, to defend an action brought to recover for injuries allegedly caused by that product. The language in these cases seems to indicate that due process would be denied the alien manufacturer if he was subjected to jurisdiction merely because a tort was committed in the state. However, if it is also foreseeable to the foreign manufacturer that his product would be used in the United States, then the defendant's due process rights are not violated. *See, e.g., Duple, supra* and *Omstead, supra.* This analysis of the problem is reasonable, and we will apply it to the instant case.

■ Alliance sold to another Hong Kong corporation which distributed the goods for sale in the United States. However, for our purposes, the chain of distribution makes no difference. If the manufacturer can reasonably foresee that his product will be used in the United States, it should not matter how many middlemen control the product before it gets here. Otherwise, alien manufacturers would set up intricate distribution channels merely to avoid the possibility of defending a lawsuit in the United States. Such circuitous distribution chains have not protected alien manufacturers in other jurisdictions. *E.g., Scafati, supra* and *Deutsch, supra.*

■ An additional requirement to be met before subjecting an alien manufacturer to personal jurisdiction was mentioned in *Omstead, supra,* and is inherent in all these stream of commerce cases. The injury complained of must have resulted from a use intended or foreseeable by the manufacturer. Here, Alliance

claims that it had no intention or knowledge that the pants it manufactured were to be sold as ''ski pants.''

■ Although Alliance filed affidavits which alleged facts sufficient to relieve it of liability under the rules laid down here, we do not have before us the transcript of the proceedings in the trial court, and we do not know what evidence, if any, was presented by the plaintiff to support the allegations of the complaint. In *Texair, supra,* however, we held that once the plaintiff has alleged facts sufficient to set forth a prima facie showing of jurisdiction, as the plaintiff has done in this case under the guidelines we have set down here, ''the process is not vulnerable to a motion to quash based upon lack of jurisdiction.'' 506 P.2d at 369. The plaintiff does not have to prove the merits of her action to initially establish in personam jurisdiction. Of course, the question of jurisdiction can be raised later on appeal if Alliance still believes that there is insufficient evidence to support plaintiff's allegations.

■ We are not unmindful of the additional considerations which some commentators have said are important in suits against alien corporations. *See, e.g.,* von Mehren and Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 74 *Harv. L. Rev.* 1121 (1966); Comment, *Long Arm Statutes – Jurisdiction Over Alien Manufacturers in Product Liability Actions,* 18 *Wayne L. Rev.* 1585 (1972); Comment, *The Long-Arm Reaches the International Manufacturer – A Criticism,* 8 *Willam L.J.* 54 (1972). These considerations are (1) the defendant should not be forced to litigate in this country when the plaintiff is as able to litigate abroad as the defendant, (2) courts should avoid exercising jurisdiction over an alien corporation when to do so would damage the United States' foreign relations, and (3) courts should not render judgments which are unenforceable in the defendant's country. Upon analysis, these concerns do not change our ruling that Alliance may be subject to personal jurisdiction in Colorado if it could reasonably foresee that its pants would be sold as ski apparel in the United States.

First, this is not a case in which the plaintiff would be as able to litigate in a foreign country as the defendant corporation. In this case the plaintiff is an individual and not a corporation with a

nationwide or worldwide business operation. Also, the witnesses in this case who would testify as to the cause and extent of the plaintiff's injury are in Colorado and not in some other jurisdiction. Second, we point out that in this case a native corporation which engaged in conduct identical to Alliance's would also be subjected to the personal jurisdiction of a Colorado court.

■ Finally, we do not feel we should be concerned with whether any judgment rendered against Alliance would be enforceable in Hong Kong. The plaintiff is the best judge of whether to pursue a suit against a foreign corporation. If the judgment is not enforceable in Hong Kong, the plaintiff could find assets of the defendant in other states or nations which would recognize the judgment. We agree with Professor Juenger that determining jurisdiction by deciding if the judgment is enforceable in the foreign country would discriminate against countries with liberal recognition rules and encourage countries to adopt a practice of nonrecognition. *See* Juenger, *Conflict of Laws, 1970 Annual Survey of Michigan Law,* 17 *Wayne L. Rev.* 339, 342 (1971).

We discharge our rule to show cause without prejudice to the defendant to raise the question of jurisdiction on appeal.

MR. JUSTICE ERICKSON dissents.

MR. JUSTICE KELLEY does not participate.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent. The skeleton record which supports this original proceeding consists of the plaintiff's complaint, the defendant's motion to dismiss the complaint and quash service of process (which is supported by an affidavit and brief), and a court order denying the motion to dismiss and quash service of process. *See* C.R.C.P. 12.

The motion to dismiss asserts that Alliance is not qualified to do business in Colorado; has sold no products in the State of Colorado; has no agents, employees, servants, telephone listings, advertisements, distributors, or other contacts with or in the State of Colorado. The majority opinion accepts the bald allegations of negligence and other tortious conduct in the complaint as a basis for interpreting our long-arm statute so as to cause *in personam*

jurisdiction to attach to Alliance. Section 13-1-124(1)(b), C.R.S. 1973. Alliance Clothing Ltd., a Hong Kong corporation, manufactured certain clothing in accordance with specifications supplied by Archer Enterprises Ltd., another Hong Kong corporation. From the limited record, it is impossible to determine that Alliance did anything else. Foreseeability by Alliance of the use of the garment in issue in the United States or in Colorado is supported by broad allegations in the complaint and nothing else. The mere manufacture of a garment, such as pants, by one Hong Kong corporation for another does not require that the use and location of the final purchaser must be predicted with certainty on the penalty of suffering liability in a distant country.

I do not read *Texair Flyers, Inc. v. District Court,* 180 Colo. 432, 506 P.2d 367 (1973), as authority for the extension of jurisdiction under our long-arm statute to the acceptance of a mere allegation of negligence, or other tortious conduct, as a basis for finding that *in personam* jurisdiction exists on a world-wide basis. Alliance alleges that our decisions in *Ferrari S.p.A. Sefca v. District Court,* 185 Colo. 136, 522 P.2d 105 (1974); *Granite States Volkswagen Inc. v. District Court,* 177 Colo. 42, 492 P.2d 624 (1972); and *Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 448 P.2d 783 (1968), require an opposite conclusion. I agree.

In my view, due process and the traditional notions of fair play and substantial justice set out in *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), are violated by the result reached in this case.